OPINION *Page 2 
{¶ 1} Defendants-Appellees Willo Security, Inc. and Kevin A. Johnson appeal from the April 30, 2007, May 2, 2007, and June 13, 2007, Judgment Entries of the Stark County Court of Common Pleas, which granted default judgment and awards of compensatory and punitive damages in favor of Plaintiff-Appellant Joshua J. Doepker.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On March 21, 2007, Plaintiff-Appellee Joshua J. Doepker filed suit against Defendants Willo Security, Inc, and Kevin A. Johnson. In said Complaint, Plaintiff-Appellee Doepker alleges the following:
 {¶ 3} On October 27, 2006, Plaintiff-Appellee Doepker drove a friend to Skyline Terrace Apartments on Allen Page Drive, SE, in Canton Ohio. At the time, Appellant Kevin Johnson was on the premises in his capacity as a private security officer, employed by Appellant Willo Security, Inc.
 {¶ 4} Plaintiff-Appellee parked his vehicle in the parking lot of the apartment complex and waited in his vehicle while his friend visited an apartment. (Complaint, ¶ 7). Plaintiff-Appellee's friend exited the apartment and returned to Plaintiff-Appellee's vehicle, and the two men prepared to leave the complex. (Complaint, ¶¶ 8-9). As Plaintiff-Appellee put his vehicle into reverse to depart, his vehicle was surrounded by security employees of Defendant-Appellant Willo Security, Inc. (Complaint, ¶ 9). At that same time and place, Defendant-Appellant Kevin Johnson, who was acting in the course and scope of his employment with Defendant Willo Security, approached Plaintiff-Appellee's vehicle. (Complaint, ¶¶ 9-10). Plaintiff-Appellee alleges that Defendant-Appellant Johnson drew his Glock 9 mm handgun and fired his gun through *Page 3 
the windshield of the vehicle, striking Plaintiff-Appellee's neck and spinal cord, causing him to suffer injuries, including permanent quadriplegic paralysis. (Complaint, ¶ 11).
 {¶ 5} Service upon Defendant Johnson was completed on March 26, 2007. (Docket, Case No. 2007-CV-01280).
 {¶ 6} Service upon Defendant Willo Security's statutory agent, Mark Trubiano, who is an attorney licensed to practice law in the State of Ohio, was completed on March 27, 2007. (Docket; Transcript of Hearing, May 9, 2007, at 5, 11-12.)
 {¶ 7} Neither Defendant filed an Answer to said Complaint.
 {¶ 8} On April 30, 2007, Appellee Doepker filed a motion for default judgment.
 {¶ 9} On April 30, 2007, the trial court granted the motion as to liability.
 {¶ 10} On May 2, 2007, the trial court filed a second Judgment Entry granting Plaintiff's Motion for default judgment, concluding all issues of liability in Plaintiffs favor.
 {¶ 11} Hearings on damages took place on May 9, 2007, and June 6, 2007.
 {¶ 12} At the damages hearing held in connection with the proceedings on Plaintiff-Appellee Doepker's motion for default judgment, Appellant Kevin Johnson testified in court concerning the events which transpired on October 27, 2006. Appellant Johnson testified that the shooting occurred during the course of an investigation into suspicious activity, when Appellee Doepker continued to operate a motor vehicle in reverse, contrary to verbal commands made by Officer Johnson to stop the vehicle. Appellant Johnson claimed that the situation escalated as a result of Appellee's own actions, and Appellant Johnson acted in self-defense as well as in defense of a fellow officer, who was standing in the vicinity of the rear of the motor vehicle being operated by Appellee. In addition, Appellee Johnson argued that Appellee's own actions *Page 4 
contributed to the incident in question in that, as he was backing his vehicle, the passenger side, rear-view mirror on the vehicle struck Officer Johnson's arm, at the time his service weapon was discharged. (Transcript of Proceedings, filed July 5, 2007, pp. 47-49).
 {¶ 13} By judgment entry filed June 13, 2007, the trial court ordered that judgment be rendered in the amount of Thirty-four Million Four Hundred Eight Thousand Six Hundred Seventeen Dollars ($34,408.617.00) for compensatory damages to be awarded to Plaintiff-Appellee against Defendants-Appellants jointly and severally. The trial court also awarded the amount of Eighteen Million Dollars ($18,000,000.00) for punitive damages to be awarded to Plaintiff-Appellee against Defendants-Appellants jointly and severally.
 {¶ 14} Appellants now appeal, raising the following assignments of error for review:
 ASSIGNMENTS OF ERROR {¶ 15} "I. THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR LEAVE TO FILE THEIR JOINT ANSWER, TENDERED PRIOR TO THE FINAL ENTRY OF DEFAULT JUDGMENT IN THIS CASE, AND WITHIN 18 DAYS OTHERWISE REQUIRED BY THE OHIO RULES OF CIVIL PROCEDURE, TO APPELLANTS' PREJUDICE.
 {¶ 16} "II. THE TRIAL COURT'S AWARD OF PUNITIVE DAMAGES AS PART OF ITS DEFAULT JUDGMENT IN THIS CASE IS UNWARRANTED AND UNSUPPORTED BY THE WEIGHT OF THE EVIDENCE IN THE RECORD BEFORE *Page 5 
THE COURT, AND BEYOND THAT PERMITTED BY DUE PROCESS, AS A MATTER OF LAW."
 I. {¶ 17} In Appellants' first assignment of error, Appellants contend that the trial court erred when it denied Appellants' motion for leave to answer instanter. We disagree.
 {¶ 18} Civil Rule 6(B)(2) provides that "[w]hen by these rules * * * an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect[.]"
 {¶ 19} A Civ. R. 6(B)(2) determination lies within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion. Miller v. Lint (1980), 62 Ohio St.2d 209,213-214. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 20} Initially, we note that "there is a presumption of proper service in cases where the Civil Rules on service are followed. However, this presumption is rebuttable by sufficient evidence." Rafalski v.Oates (1984), 17 Ohio App.3d 65, 66, citing Grant v. Ivy (1980),69 Ohio App.2d 40. *Page 6 
 {¶ 21} In the case sub judice, it is undisputed that Appellee followed the civil rules and that the clerk of courts properly sent a copy of the complaint to Appellants via certified mail. Accordingly, a rebuttable presumption arose that service was proper. Furthermore, Appellants' counsel has not challenged the fact that Appellants were properly served and the record reflects that Appellants were properly served. Accordingly, Appellants have failed to rebut the presumption of proper service.
 {¶ 22} Further, Appellants have not argued that they demonstrated excusable neglect for their failure in filing an answer. In determining whether neglect is excusable or inexcusable, this Court must take into consideration all the surrounding facts and circumstances, and must be mindful of the admonition that cases should be decided on their merits, where possible, rather than procedural grounds. Marion Production CreditAssn. v. Cochran (1988), 40 Ohio St.3d 265, 271. "Although excusable neglect cannot be defined in the abstract, the test for excusable neglect under Civ. R. 6(B)(2) is less stringent than that applied under Civ. R. 60(B)." State ex rel. Lindenschmidt v. Butler Cty. Bd. ofCommrs. (1990), 72 Ohio St.3d 464, 466.
 {¶ 23} The undisputed facts before this Court are:
 {¶ 24} On March 21, 2007, Plaintiff-Appellee filed his Complaint against Defendants-Appellees.
 {¶ 25} Appellant Johnson was served by certified mail on March 26, 2007, and Appellant Willo Security, through its statutory agent Attorney Mark Trubiano, was served by certified mail on March 27, 2007, requiring Answers to be served by April 23, 2007, and April 24, 2007, respectively.
 {¶ 26} Appellants failed to meet such Answer date. *Page 7 
 {¶ 27} On April 30, 2007, Appellee filed a Motion for Default Judgment.
 {¶ 28} On April 30, 2007, the trial court signed a Judgment Entry granting default judgment.
 {¶ 29} On May 2, 2007, the trial court re-filed its judgment entry granting default judgment.
 {¶ 30} On May 8, 2007, Appellants faxed to the trial court a Motion for Leave to Plead to which Appellees filed a brief in opposition. In said Motion for Leave, counsel for Appellants argued that service was not completed on Appellants until April 6, 2007, and that the motion for default was therefore filed prematurely. Appellants incorrectly read the docket entry of service, reading the date of entry of service on the docket (April 6, 2007) as the date of service (March 26, 2007). No excusable neglect was alleged in said motion.
 {¶ 31} On May 9, 2007, a damages hearing commenced in this matter. Attorney Trubiano was present at said hearing, in addition to new counsel for Appellants also being present.
 {¶ 32} At the beginning of said hearing, the trial court overruled Appellants' motion for leave to plead, finding said filing to be inappropriate due to default having already been granted.
 {¶ 33} The damages hearing was not concluded on this day and was continued to June 6, 2007.
 {¶ 34} On May 11, 2007, Appellants' Motion for Leave to Plead was docketed.
 {¶ 35} On June 6, 2007, the damages hearing in this matter resumed and the trial court heard additional evidence. *Page 8 
 {¶ 36} On June 13, 2007, the trial court overruled such motion and filed its final Judgment Entry granting default judgment.
 {¶ 37} Upon review of the record, this Court fails to find any evidence of "excusable neglect" for Appellants' failure to file an Answer in the case sub judice. Appellants offered the trial court no explanation or excuse for their failure to act prior to the filing of their Motion for Leave to Plead. Appellants offer no better explanation on appeal.
 {¶ 38} Appellants repeated assertions that cases should be decided on their merits does not change the fact that they have not met their burden of showing excusable neglect.
 {¶ 39} Accordingly, this Court cannot say that the trial court acted unreasonably or arbitrarily in finding that Appellants had not demonstrated excusable neglect for their untimely filing.
 {¶ 40} Appellant's first assignment of error, therefore, is overruled.
 II. {¶ 41} In their second assignment of error, Appellants argue that the trial court's award of punitive damages is unwarranted and not supported by the weight of the evidence. We disagree.
 {¶ 42} Appellants initially argue that the award of punitive damages is against the weight of the evidence.
 {¶ 43} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being *Page 9 
against the manifest weight of the evidence." C.E. Morris Co. v. FoleyConst. Co. (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578
 {¶ 44} In the case sub judice, Appellants failed to answer and/or challenge the averments contained in Appellee's Complaint and a default judgment was granted. Averments in a pleading to which a responsive pleading is required are admitted when not denied pursuant to Civ. R. 8(D). However, it is not correct that simply because certain conduct is deemed admitted, damages will follow. Civ. R. 8(D) reads in pertinent part as follows:
 {¶ 45} "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." (Emphasis added.)
 {¶ 46} Appellee was therefore required to prove his damages at the hearing. However, because a default judgment was granted, Appellants, in failing to respond to the complaint, were deemed to have admitted that their "conduct displayed a conscious disregard for the rights and safety of others, including Plaintiff, which conduct had a great probability of causing and did cause substantial harm to Plaintiff" and that Appellants "acted with ill-will, malice or in reckless disregard of Plaintiffs rights thereby causing Plaintiff to suffer permanent and grievous physical and mental injuries." See Civ. R. 8(D).
 {¶ 47} "In a tort action, the trier of fact shall determine the liability of any defendant for punitive or exemplary damages and the amount of those damages." R.C. § 2315.21 (D)(1). "Punitive damages are awarded to punish the guilty party and deter *Page 10 
tortious conduct by others." Digital Analog Design Corp. v. NorthSupply Co. (1992), 63 Ohio St.3d 657, 660, 590 N.E.2d 737.
 {¶ 48} On review to determine whether a punitive damage award is excessive, the award will not be overturned unless it bears no rational relationship or is grossly disproportionate to the award of compensatory damages. Shore, Shirley Co. v. Kelley (1988), 40 Ohio App.3d 10, 16,531 N.E.2d 333.
 {¶ 49} The recovery and determination of punitive damage awards is addressed in R.C. § 2315.21, which provides in relevant part:
 {¶ 50} "(B)(3) In a tort action that is tried to a court and in which a plaintiff makes a claim for both compensatory damages and punitive or exemplary damages, the court shall make its determination with respect to whether the plaintiff is entitled to recover compensatory damages for the injury or loss to person or property from the defendant and, if that determination is in favor of the plaintiff, shall make findings of fact that specify the total compensatory damages recoverable by the plaintiff from the defendant.
 {¶ 51} "(C) Subject to division (E) of this section, punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:
 {¶ 52} "(1) The actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate. *Page 11 
 {¶ 53} "(2) The trier of fact has returned a verdict or has made a determination pursuant to division (B)(2) or (3) of this section of the total compensatory damages recoverable by the plaintiff from that defendant.
 {¶ 54} "(D)(1) In a tort action, the trier of fact shall determine the liability of any defendant for punitive or exemplary damages and the amount of those damages.
 {¶ 55} "(2) Except as provided in division (D)(6) of this section, all of the following apply regarding any award of punitive or exemplary damages in a tort action:
 {¶ 56} "(a) The court shall not enter judgment for punitive or exemplary damages in excess of two times the amount of the compensatory damages awarded to the plaintiff from that defendant, as determined pursuant to division (B)(2) or (3) of this section.
 {¶ 57} "(b) If the defendant is a small employer or individual, the court shall not enter judgment for punitive or exemplary damages in excess of the lesser of two times the amount of the compensatory damages awarded to the plaintiff from the defendant or ten percent of the employer's or individual's net worth when the tort was committed up to a maximum of three hundred fifty thousand dollars, as determined pursuant to division (B)(2) or (3) of this section."
 {¶ 58} For purposes of the above statute, a "Small employer" is defined as an entity with not more than 100 full-time permanent employees or, if the company qualifies as a manufacturer, with not more than 500 full-time permanent employees. R.C. § 2315.21 (A)(5).
 {¶ 59} In the instant case, the compensatory damage award was $34,408,617.00 and the punitive damage award was $18,000,000.00, which is *Page 12 
approximately fifty-two percent (52%) of the compensatory damage award, well under the cap of "two times the amount of the compensatory damages awarded to the plaintiff from that defendant."
 {¶ 60} As to Kevin Johnson, we could presume that ten percent of his net worth at the time the tort was committed would be less than the punitive damages award in the instant case. However, as there was no evidence presented to the trial court as to same, we shall not disturb such award.
 {¶ 61} As there has been no argument raised nor any evidence presented at the damages hearing as to Willo Security, Inc. being a "small employer", we do not need to review the punitive damage award in the context of such being less than or more than ten-percent (10%) of such employer's net worth.
 {¶ 62} Based on the foregoing, we find Appellants' second assignment of error not well-taken and hereby overrule same.
 {¶ 63} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
 Wise, J., Gwin, P. J., and Edwards, J., concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
 Costs assessed to Appellants. *Page 1