[Cite as *Smith v. Conti*, 2026-Ohio-2151.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
HOLMES COUNTY, OHIO

| | |
|---|---|
| DARRELL JAMES SMITH, | Case No. 25CA011 |
| Plaintiff - Appellant | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas of Holmes County, Case No. 24CV090 |
| DAVID CONTI, et al., | Judgment:  Affirmed |
| Defendants - Appellees | Date of Judgment:  June 5, 2026 |

BEFORE: Craig R. Baldwin, Robert G. Montgomery, and David M. Gormley, Judges

APPEARANCES: Darrell J. Smith, Chillicothe, Ohio, briefed the case on his own behalf as Plaintiff-Appellant; John E. Chapman, Cuyahoga Falls, Ohio, for Defendants-Appellees.

*Gormley, J.*

{¶1}  Appellant Darrell Smith challenges the trial court's decision granting summary judgment in favor of the defendants.  He also alleges that the trial court earlier erred by vacating a default judgment against the defendants and by denying his motion asking for permission to amend his complaint.  For the reasons that follow, we find no errors in the trial-court proceedings, and we affirm the judgment in favor of the defendants.

**The Key Facts**

{¶2}  The events giving rise to the lawsuit in this case occurred in October 2022.  At some point before that date, Smith (our plaintiff) had resided with Julie Saffell (one of the defendants) at a home on State Route 514 in Holmes County's Ripley Township.  Ms. Saffell's parents — David and Elizabeth Conti (who were also named as defendants in Smith's complaint) — owned the Ripley Township home.  Julie, by October 2022, had

moved with her parents and her adult daughter — Desiree Culbertson (also a named defendant in the case) — to a home in Wayne County.

{¶3} On October 16, 2022, Smith and Julie were in Smith's camper in the backyard of the Conti property in Ripley Township when Julie's daughter Desiree arrived and entered the camper. Smith alleged in his complaint that Desiree then shot him without provocation using a gun that she had brought to the property. Desiree in turn (according to an affidavit that she filed during trial-court proceedings on Smith's complaint) acknowledges that she shot Smith, but she did so, she says, because Smith was armed with a pipe wrench when she entered the camper, and he raised it menacingly toward her there. After a police investigation of the shooting, no criminal charges were filed against Desiree.

{¶4} Smith filed his complaint in October 2024 against the four defendants (Desiree, Julie, and Julie's parents) to recover damages for the physical injuries he suffered from the shooting. The complaint — prepared by Smith himself without the aid of legal counsel — did not specify any particular causes of action but did include phrases such as "[d]uty of care owed to trespasser" under R.C. 2305.402, "[c]ivil recovery by persons injured" under R.C. 2307.60, and "[b]odily [i]njury" under R.C. 2305.10. Smith also sought damages for what he described as conspiracy to commit civil aggravated assault and aggravated injury and for "[i]ntentional [s]evere [b]odily [i]njury," "[p]remises [l]iability," and "[n]egligence in an [i]ntentional or [r]eckless [t]ort [c]laim." Smith sought over $2 million in damages from the defendants.

{¶5} In response, the defendants filed a joint answer and counterclaim, but that pleading was filed after the due date, and the defendants filed it without first seeking the trial court's permission for the tardy filing. Smith in turn moved to strike the defendants'

untimely answer and counterclaim, and he also asked the trial court to grant a default judgment in his favor. The trial court sided with Smith, striking the defendants' tardy pleading and granting a default judgment to Smith. The case was then set for a damages hearing.

{¶6} Before that hearing took place, though, the defendants — at that point represented by new counsel — filed a motion asking the trial court to not only vacate the default judgment but also allow the defendants to file a new answer to Smith's complaint. The trial court agreed, and the defendants then filed that new answer.

{¶7} Next — roughly 11 months after he had filed his complaint — Smith sought permission from the trial court to file an amended complaint, and the defendants meanwhile moved for summary judgment on all of the claims in Smith's original complaint. The trial court denied Smith's motion to amend the complaint and then granted the defendants' motion for summary judgment. Smith now appeals that judgment. (His notice of appeal to our court was filed after the 30-day deadline set by Ohio's Appellate Rules, but we have nonetheless agreed to hear the appeal because service by the trial-court clerk of the trial court's summary-judgment ruling likewise appears to have been tardy.)

{¶8} One other filing hiccup arose during the briefing stage of this appeal: The proof-of-service page at the end of the appellees' brief does not list a "manner of service" as that term is used in App.R. 13(E), and that shortcoming prompted Smith to ask us to strike the appellees' brief. Though we did direct the appellees to provide us with a corrected proof-of-service page, none was ever filed. For that reason, we have, in accordance with App.R. 13(E), "not . . . considered" the appellees' brief.

**{¶9}** As for Smith's brief, he lists 15 assignments of error, some of which are closely related. In addressing them, we have grouped some of those related arguments together where appropriate.

## The Trial Court Did Not Abuse Its Discretion by Vacating the Default Judgment

**{¶10}** Smith argues that the trial court abused its discretion by vacating the default judgment granted in his favor. He also contends that the trial court should not have relied on Civil Rule 60(B) when vacating that initial judgment because that rule allows a trial court to grant relief only from a "final judgment," and the default-judgment order in favor of Smith was not a final one.

**{¶11}** We certainly agree that a default judgment that "determines the issue of liability but continues the matter for a determination of damages is not a final judgment." *Arledge v. Brown*, 2007-Ohio-57, ¶ 4 (5th Dist.). Unquestionably, too, "Civ.R. 60(B) only permits the vacation of final judgments." *Yoakam v. Boyd*, 2009-Ohio-395, ¶ 14 (6th Dist.).

**{¶12}** But "interlocutory orders — as opposed to final judgments — can be reconsidered and altered by a trial court while litigation is ongoing." *Wood v. Energex Power, Inc.*, 2026-Ohio-729, ¶ 10 (5th Dist.). *See also* Civ.R. 54(B) ("any order" that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" does not "terminate the action," and "the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties").

**{¶13}** Trial-court proceedings on Smith's complaint remained unfinished once the trial court had granted Smith's motion for a default judgment and scheduled a hearing on

the amount of damages to be awarded. *See White Stag Aircraft Leasing United States LLC v. JP Morgan Chase Bank, N.A.*, 2021-Ohio-1245, ¶ 14 (7th Dist.) ("the entry of default judgment with a damages hearing pending was not a final judgment; a Civ.R. 60(B) motion may only be directed to final judgments; and the motion was actually a motion to reconsider an interlocutory order which is not appealable").

**{¶14}** The trial court, therefore, did have authority to reconsider its order granting a default judgment in favor of Smith. And we review the trial court's decision for an abuse of discretion. *Nelson v. Powers*, 2016-Ohio-1159, ¶ 16 (11th Dist.). An abuse of discretion is more than a mere error of law; "it implies that the court's attitude is unreasonable, arbitrary[,] or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶15}** The four defendants initially hired attorney Wesley Johnston to represent them in the trial court. Attorney Johnston failed to timely file an answer on their behalf and later failed to seek permission from the trial court for his tardy filing of an answer and counterclaim. After the trial court granted Smith's motion to strike the defendants' tardy pleading as well as his motion for a default judgment, the defendants retained new counsel. That new lawyer then filed a motion asking the trial court to vacate the default judgment, and that motion was accompanied by an affidavit from attorney Johnston in which he claimed that his failure to timely file an answer for the defendants was attributable to his own inadvertent and unintentional missteps.

**{¶16}** "In determining whether neglect is excusable or inexcusable, this Court must take into consideration all the surrounding facts and circumstances" and must be "mindful of the admonition that cases should be decided on their merits, where possible, rather than procedural grounds." *Doepker v. Willo Sec., Inc.*, 2008-Ohio-2008, ¶ 22 (5th

Dist.). The trial court presumably chose not to impute to the defendants the inattentiveness of their attorney.

{¶17} The defendants, in their motion seeking relief from the default judgment, also noted that they had identified a colorable statute-of-limitations defense to the causes of action that Smith's complaint appeared to have alleged against them. "Where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." *GTE Automatic Elec. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph three of the syllabus.

{¶18} We find that the trial court did not abuse its discretion when it reconsidered its non-final order granting Smith's motion for a default judgment. The trial court acted within the permissible scope of its discretion when it evidently concluded that the defendants should not suffer the consequences of their prior counsel's carelessness.

## The Trial Court Did Not Abuse Its Discretion by Denying Smith's Motion to Amend His Complaint As Well As His Request that the Case-Management Schedule Be Modified

{¶19} Smith also argues that the trial court abused its discretion by denying his motions to amend his complaint and modify the case-management schedule.

{¶20} "The decision of whether to grant a motion for leave to amend a pleading is within the discretion of the trial court." *Meehan v. Mardis*, 2022-Ohio-1379, ¶ 4 (1st Dist.). Although Civil Rule 15(A) provides that leave to amend a pleading should be "'freely granted when justice so requires,'" a trial court should deny leave "'if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party.'" *Id.* at ¶ 5, quoting *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 99 (1999). "[W]here a motion for leave to file an amended complaint is not timely tendered and there is no

apparent reason to justify the delay, a trial court does not abuse its discretion in denying a proposed amendment." *Franciscan Communities, Inc. v. Rice*, 2021-Ohio-1729, ¶ 37 (8th Dist.).

{¶21} After the trial court, in April 2025, vacated its entry granting a default judgment in Smith's favor, that court also modified the case-management schedule by setting a new dispositive-motion deadline of September 15, 2025. Smith's motion to modify the case-management schedule was filed on September 8, 2025, and his motion to amend his complaint was filed on September 9, 2025. The defendants filed their motion for summary judgment on September 11, 2025.

{¶22} In his motion seeking permission to amend his complaint, Smith claimed that he had just learned additional facts that supported additional causes of action. But in its entry denying Smith's motion, the trial court found that the alleged additional facts came from a report prepared by the county sheriff's office that was presumably available to him as a public record when he filed his original complaint. The trial court also found that any new facts that had in fact been uncovered by Smith could support his existing claims, and he need not file an amended complaint to raise them.

{¶23} As for Smith's motion to modify the case-management schedule, the trial court noted that Smith had already sought and been granted an earlier change in the case schedule, and, given that the defendants had by then filed a motion for summary judgment, additional delays or any reopening of the discovery window would, in the trial court's view, be unfairly prejudicial to them.

{¶24} Trial courts have the inherent authority to manage their own proceedings and to control their own dockets. *Collier v. Conley*, 2014-Ohio-2609, ¶ 16 (5th Dist.). In our review of the record in this case, we cannot say that the trial court abused its discretion

when it denied Smith's motion to amend his complaint as well as his motion asking the trial court to modify the case-management schedule.

**The Trial Court Properly Granted the Defendants' Motion for Summary Judgment**

{¶25} Next, we turn to the merits of the trial court's summary-judgment decision. Appellate courts review with fresh eyes a trial court's decision on a motion for summary judgment. *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30 ("an appellate court applies a de novo standard of review" when a summary-judgment decision is challenged). In reviewing the trial court's judgment in this case, we must conduct "an independent review of the evidence without deference to the trial court's findings." *Id*. In doing so, we examine the evidence available in the record and determine whether summary judgment is appropriate. *Id*.

{¶26} Under Civ.R. 56(C), summary judgment may be granted only after the trial court determines that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and — viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made — that conclusion is adverse to that party. *PNC Bank Natl. Assn. v. Whitaker*, 2025-Ohio-1078, ¶ 17 (5th Dist.), citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party seeking summary judgment bears the initial burden of demonstrating that no issues of material fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). The moving party must be able to point to some evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support its claims. *Id*. at 292–293. If the moving party satisfies its initial

burden, the nonmoving party then has the reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. *Id*. at 293. The record on summary judgment must be viewed in a light most favorable to the nonmoving party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 152 (1974).

### 1. Smith's Claims Against Desiree Were Time Barred

{¶27} The defendants, in their motion for summary judgment, argued that Smith's complaint was barred by the statute of limitations. Affidavits from three of the four defendants — David Conti, Desiree Culbertson, and Julie Saffell — were attached to that motion. Smith moved to strike the affidavits, claiming that they had not been properly attached to or referenced in the motion and had not been labeled as exhibits to it. The trial court did not specifically address Smith's argument that the affidavits should be stricken, but the trial court did, in its summary-judgment decision, deny "[a]ll other pending motions," and that court does appear to have considered the affidavits in ruling on the defendants' motion for summary judgment.

{¶28} Civil Rule 56(A) provides that a party "may move with or without supporting affidavits for a summary judgment in the party's favor." Civil Rule 56(E) further provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." The rule does not specify any particular reference requirements or labeling rules for summary-judgment affidavits. And Smith does not provide any authority to support his position that the way the defendants attached the affidavits to the motion for summary judgment was not sufficient.

**{¶29}** Smith's complaint — filed two years after the shooting — alleges various theories for the recovery of damages sustained from the gunshot wound. "When bodily injury results from negligence, the two-year statute of limitations, R.C. 2305.10, is the appropriate statute of limitations. However, when bodily injury results from an assault or battery, the one-year statute of limitations, R.C. 2305.111, is applicable." *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 98 (1988).

**{¶30}** The Supreme Court of Ohio has held that "'in determining which limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded.'" *Id.* at 99, quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984). "Where the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as an act of negligence." *Love* at syllabus.

**{¶31}** In this case, the specific act that Smith complains of — being shot by Desiree — is an act of intentional contact that, unless it is privileged, constitutes a battery. "A person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results." *Id.* at 99.

**{¶32}** Although nearly any assault and battery can be pled as a claim in negligence, "assault and battery cannot be transferred into another type of action subject to a longer statute of limitations as it would circumvent the statute of limitations for assault and battery to allow that to be done." *Grimm v. White*, 70 Ohio App.2d 201, 203 (10th Dist.). *See also Kuhar v. Marc Glassman, Inc.*, 2009-Ohio-2379, ¶ 8 (8th Dist.) ("When the essential character of the alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery applies, even if the touching is pled as an act of negligence").

**{¶33}** Any cause of action arising out of an assault and battery is barred by the one-year statute of limitations. *See Jordan v. Howard*, 2021-Ohio-4025, ¶ 32 (2d Dist.) ("the underlying cause of action was for assault and battery, and the statute of limitations for civil conspiracy would also be the one-year statute applied to that claim"); *Ettayem v. H.E.R., LLC*, 2020-Ohio-4647, ¶ 24 (5th Dist.) (adopting — and including as an appendix — the trial court's decision, in which that court had held that a claim brought under R.C. 2307.60 (a civil action for damages for a criminal act) is subject to the one-year statute of limitations); *Estill v. Waltz*, 2002-Ohio-5004, ¶ 24 (10th Dist.) (applying the one-year limitations period and explaining that "the fact that Ryan struck plaintiff in the head in apparent self-defense, based on Ryan's allegedly mistaken belief that plaintiff's gesture toward him was hostile, may *justify* Ryan's intentional use of force against plaintiff, but it does not transform Ryan's act from an intentional to a negligent act"). And any cause of action against Desiree's mother and grandparents for imputed liability based upon the theory of assault and battery is also barred by the statute of limitations. *Grimm* at 204.

### 2. The Owners of the Property Where the Shooting Occurred Owed No Duty of Care to Smith

**{¶34}** As for Smith's claims against the defendant property owners — David and Elizabeth Conti — Smith "must establish the existence of a legal duty the respective defendants owed" to him. *Estill* at ¶ 27. In other words, for the Contis — who were not on the property when Smith was injured by Desiree — to be liable for negligence, they must have breached a duty owed to Smith. *Id.*

**{¶35}** "In general, absent some special relationship, there is no duty to act affirmatively for the protection of another person or to prevent a third person from causing harm to another person." *Id.* at ¶ 28. "In a negligence action involving premises

liability, as here, the status of a person who enters upon the land of another determines the scope of legal duty owed to him." *Id.* The three recognized categories for a person who enters onto the land of another are: (1) trespasser; (2) licensee; and (3) invitee. *Id.*

{¶36} It is undisputed that the Contis did not invite Smith onto their property. In his affidavit, David Conti stated that he had previously ordered Smith not to return to the property and had not given him permission to be there on the day of the shooting. Smith does not allege in his complaint that the Contis gave him permission to be at the property that day.

{¶37} Landowners owe no duty to trespassers except to refrain from willful, wanton, or reckless conduct that is likely to cause injury. *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 317 (1996). Neither David nor Elizabeth Conti caused physical harm to Smith. It was their adult granddaughter — Desiree Culbertson — who shot Smith. "Ordinarily, there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third person which gives rise to a duty to control." *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 45 Ohio St.3d 171, 173 (1989).

{¶38} Smith has failed to show that a special relationship existed between Desiree and the Contis. "Relationships that may give rise to a duty to control a third person's conduct include the following: (1) parent and child; (2) master and servant; and (3) custodian and person with dangerous propensities." *Hall v. Watson*, 2002-Ohio-3176, ¶ 16 (7th Dist.). None of those relationships were present in this case, and the Contis' mere act of providing Desiree with a ride to the property does not establish a special relationship.

{**¶39**} Whether a duty exists also depends on the foreseeability of the injury. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984). "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Id.*

{**¶40**} There is nothing in the record to support the conclusion that Smith's injury was foreseeable to the Contis. Even with all evidence in the record construed most strongly in Smith's favor, we find no support for Smith's view that the Contis should have anticipated that Desiree would shoot Smith in what Desiree characterized to law-enforcement officers as self-defense.

### 3. None of Smith's Allegations Point to Any Liability on the Part of Desiree's Mother

{**¶41**} Finally, we readily conclude that summary judgment was properly granted in favor of the one other defendant named in Smith's complaint. That person — Julie Saffel, who is the mother of Desiree and the daughter of the Contis — neither caused Smith's injuries nor owned the property where the shooting occurred. She was in the trailer with Smith when Desiree shot Smith, but no evidence in the record suggests that Julie invited Smith there, that she caused the shooting to occur, or that she said or did anything, whether intentionally or negligently, that caused harm to Smith.

\*\*\*

{**¶42**} In short, we find that Smith's complaint alleges, in substance, an action in battery, and any such claim against any of the four defendants is barred by R.C. 2305.111(B)'s one-year limitations period. And Smith has failed to state any other viable tort claims — whether based on a theory of premises liability for dangerous conditions on real property or for other negligent, reckless, or intentional acts — against any of the

defendants.  We therefore find that the trial court properly granted the defendants' motion for summary judgment.

{¶43} For these reasons, the judgment of the Court of Common Pleas of Holmes County is affirmed.  Costs are to be paid by Appellant Darrell Smith.

By: Gormley, J.;

Baldwin, P.J. and

Montgomery, J. concur.